## KLING *against* HUMMER.

### IN ERROR.

H. devised to his wife S. his dwelling, &c. "with full privilege of the same as long as she is willing to manage the place." "In case it should be too burdensome to her, and she and my creditors will agree to dispose of the land, &c. or in case of her death, then it is my will that my executors sell the same at public or private sale, to the best advantage."

He directed in the event of a sale, that after paying his debts, his wife should have "the one-third of all money left." He empowered his "executors, or the survivor of them to make good assurance and sufficient title to the purchaser," and appointed two executors. S. went into possession, and some time after one of the executors, and some of the heirs, but not all, met and consulted about selling, which S. at first opposed, but upon the representation of some of the children, that she could live better on the interest, and if that were not sufficient, some of the principal might be taken, she assented. This executor offered the land at public sale, when the widow gave notice that she would not give up the land, the executor, notwithstanding sold. In this proceeding the co-executor, who was then in full life, was not consulted, and took no part. The co-executor died, and the surviving executor then made a deed to the purchaser, who brought ejectment against S. the widow, to recover the land. *Held*, that the land was given to her for life, and a naked authority to the executors jointly to sell by her consent, or after her death, and that one could not sell; and that it was doubtful whether the deed of the survivor to a purchase on sale by him alone in the life-time of the co-executor, would make such sale good, but it would not be good without the free and renewed consent of the widow.

Her consent to sell, made necessary by the terms of the will, was in the nature of a license or authority, and was revocable, unless given upon some valuable consideration so as to couple it with an interest.

It would seem that her consent to a sale, as it would transfer her estate, which is a freehold, should be by deed, and would fall within the provisions of the act against frauds and perjuries.

ERROR to the District Court of *York* county.

The plaintiff in error, *George Kling* brought this ejectment against *Susanna Hummer*, the defendant in error, to recover a tract of twenty acres of land in *Paradise* township, *York* county, and gave the following evidence:

The will of *John Hummer*, senior, proved 18th August, 1814, which *inter alia*, contained the following provisions:—

"*Item.* I give, devise and bequeath unto my dearly beloved wife *Susanna*, my dwelling house and land I now live on, joining lands of *Christian Graeff*, &c. together with the grain now in the ground, with full privilege of the same, as long as she my wife *Susanna*, is willing to manage the place. In case it should be too burdensome to her, and she and my executors will agree to dispose of the land and house, or in case of her death, then it is my

will, that my executors sell the same at public or private sale, to the best advantage." The testator then directs, that "when the plantation is sold," his executors shall first pay his debts out of the proceeds—that his "wife shall have the third of all the money left,"—and that the remainder, together with the residue of his estate, after giving some special legacies, shall be equally divided among his children.

"*Item.* I do hereby empower my executors or the survivor of them to make good assurance and sufficient title to the purchasers, as I myself could do, in as full and ample a manner to all intents and purposes, to them, their heirs and assigns forever," "and lastly, I do hereby nominate and appoint my son *John Hummer*, and friend *Henry Slagle*, to be executors of this my last will," &c.

The plaintiff then proved by *Peter Bolk*, as follows: "A meeting of several of the children of *Susanna Hummer*, was held at her house, when a consultation was held upon the subject of selling the land. *Susanna Hummer* was first opposed to selling; but at length her children, who were present, having made out that she could live better on the interest, and that if the interest were not sufficient, some of the principal might be taken, she assented. At the request of *John Hummer*, I asked her if she was agreed that they might sell the land. She said they might sell it. Those of her children who were present, thought she could live better if the land were sold. It was not well farmed. Very little grain had been put out. She was not able to farm it herself, and gave it out on the shares. She was to be supported out of the sale of the land, and live with one of her children."

Five only of the eleven children of *Susanna Hummer*, were present at this consultation. The others took no part in the arrangement. *Henry Slagle, died on the 21st of December*, 1829.

The plaintiff then gave in evidence a deed of *John Hummer* as surviving executor, to *George Kling*, the plaintiff, dated November 8th, 1829, acknowledged 29th December, 1829, which recited the above extract from the will of *John Hummer*, senior: described the premises in dispute in this suit; averred the seizin of the testator; the agreement of defendant to sell; and the sale made, in pursuance thereof, and conveyed the premises to *George Kling*, the plaintiff.

The defendant then proved that *John Hummer*, had the property cried at public sale. After the conditions of the sale were read, the defendant, *Mrs. Hummer*, at the vendue, declared publicly, she would not give up the land, no matter who purchased. The sale proceeded, and the land was struck down to the plaintiff. *Henry Slagle* was not present at the sale. He resided in *Mary*

(Kling *v.* Hummer.)

*land,* and there was no evidence that he took any part in the proceedings.

The plaintiff requested the court to charge the jury, that "If the occupation of the property had become burdensome to the defendant, and she was not willing any longer to manage it, and upon consultation with one of the executors, agreed that the property should be sold under the will, the deed, if executed by *John Hummer,* after the death of *Slagle* is sufficient to vest the title in the plaintiff," which the court refused to do, and charged the jury, that, "The will does not authorize the executors, severally to sell. Whilst both were living, a sale by one, without the knowledge and consent of the other, who had neither refused or renounced, could not be valid.   The death of *Slagle* before the execution of the deed cannot cure the defect of this sale, which was made before his death, and without authority."   "*Mrs. Hummer* was not indissolubly bound by the consent which she had given to the sale, but might retract it.

"The agreement was not reduced to writing, and that fact affords another reason why it did not bind her, a reason made conclusive by the act of assembly of the 21st of March, 1792.   Upon both points, then, the law is against the plaintiff.   *John Hummer,* was not authorized to make this sale alone, and without the agreement of his co-executor, who had not refused, or renounced.   Nor was the sale good, made as it was against the will and consent of *Susanna Hummer,* publicly notified at the time.

*The defendant is, therefore, entitled to your verdict.*"

The verdict and judgment being for the defendant, the plaintiff brought this writ, and now assigned for error:

1. That the court erred in refusing to charge the jury, as the plaintiff requested, and in charging the jury that the deed of *John Hummer* was not a good execution of the power in the will to sell.

2. In charging the jury that the defendant was not bound by the consent which she had given to the sale.

3. In charging the jury that the agreement of the defendant that the land should be sold, was made void by the act of 21st March, 1772.

4. In charging the jury that they should find for the defendant.

*Evans* for the plaintiff in error,

Contended that powers are to be construed according to the intent of the creator, and courts will look to the substantial rather than the literal execution of them.   Here the execution of the power was substantial.   The purchaser took, not under the widow,

(Kling *v.* Hummer.)

any estate created by her; but he took, under the will, by the exe-
cution of the power contained in the will, and therefore it was not
necessary that her assent should be in writing.    The power to sell
and to agree to the sale by the widow once executed, could not be
revoked, but an interest passed to the purchaser which conferred
upon him a superior equity.    7 *Com. D. (Day's Edition,)* 7, 8, 18.
*Sugden on Pow.* 264, 331, 332, 348, 311, 312, 350. 4 *Kent's Com.*
334, 336, 338, 321, 331, 330, 316.

The court took the case from the jury.    It was not a case in
which the plaintiff had wholly failed, in which upon a demurrer to
the evidence, the judgment would have been against him, and in
which alone he contended the court would be justified in deciding
the cause; but the facts were the subject of doubt, and they should
be referred to the jury.  *Sampson* v. *Sampson*, 4 *Serg. & Rawle*,
329. 8 *Serg. & Rawle*, 150.

*Anderson* for the defendant in error.

One executor under this will had no right to make a sale without
the concurrence of his co-executor.

The power was a naked power, not coupled with an interest, and
must be strictly pursued.  *Sugden on Pow.*, 263, 264.

The consent of *Slagle* was essential.    If the consent of a person
to the execution of a power is required, and he dies before the ex-
ecution of the power, the power is extinguished.  *Sugden on Pow.*,
265, 266.    4 *Kent. Com.*, 324.    Where the power is joint, all in
whom it is vested must join.

When an informality exists, a court of equity will sometimes in-
terfere; but that court will never supply the defect of consent of the
devisee of the power.    Nay, if a power be a naked power, it has
been disputed whether it will survive.  *Zebach* v. *Smith*, 3 *Bin.*,
69, 73.  *Moody* v. *Vandike*, 4 *Bin.*, 30.

He contended that the consent given by the defendant was alto-
gether conditional, and as all the children were not present, she had
a right to revoke it, and she did revoke it so as to give the purchaser
notice of the hazard he incurred in making the purchase.

As to the third point, he argued that the charge of the court was
immaterial, but that it was also correct.  The widow had possession,
and held an estate, to convey which writing was essential. 4 *Kent's
Com.* 324, 326, 321.

The court did not withdraw the case from the jury.  They inti-
mated a strong opinion in favor of the defendants; but this the court
had a right to do, and the case fully warranted it.

*Lewis* in reply.

This case was entirely a matter of fact for the jury.   If the con-

(*Kling v. Hummer.*)

sent of the defendant to the sale had been fairly obtained, she could not revoke it. It was to affect the title to land, and she is not permitted to be fickle and capricious in a matter affecting that title. The land, by the will, was to be sold when it became too burdensome for her; it was for the jury to judge whether this contingency had arrived. All this was taken from the jury who were instructed to find for the defendant.

The opinion of the court was delivered by

KENNEDY, J.—There does not appear to be any error in the charge which the court below gave to the jury in this case. *John Hummer*, the testator, certainly devised to the defendant a life estate in the land in dispute, with a power to his executors, *John Hummer* and *Henry Slagle* jointly, or to the survivor of them, after her death to sell it, or in the life-time of the defendant by her consent, in case the land should become too burdensome to her; and in case of a sale in her life-time, one-third of the money raising therefrom is to be paid to her. The land is given to the widow for life, and a mere naked authority to the executors to sell, by, and with the consent of the defendant, or after her death. Both the executors having taken upon themselves the burden of executing the will, one alone could not make a sale during the life of the other. Their authority under the will must be strictly pursued, and being to them jointly could not be executed by either severally after both had joined in procuring and taking out letters testamentary upon it. The sale in this case appears to have been made by *John Hummer*, one of the executors in the life-time of the other, without his being consulted, and I doubt very much whether a confirmation of it by *John*, and his executing a deed of conveyance to the plaintiff, who was the purchaser, after the death of the other executor, would make it good; most certainly not without the free and renewed consent of the widow.

Some time previously to the sale, according to the evidence in the case, her consent to sell was obtained, but certainly in a very loose way; upon a mere verbal agreement that she should have the interest on the money arising from the sale during her life, and if that should not be enough she should have some of the principal, without saying how much. A provision altogether different from that contained in the will, for by that, in case of a sale being made of the land during her life, she was entitled to have one-third of the principal. Besides the arrangement, under which her consent was given, was only made by and with a part of the children, who were all equally interested. Those who were not present, and did not agree to this arrangement, were not bound by it, and had a right to

(Kling *v.* Hummer.)

object to the widow's receiving any other part or portion than what was allowed by the will.    Considering the arrangement then in the nature of an agreement, it could not be binding upon her, unless all those who had the right and the power, to grant to her what was promised as an inducement and consideration for her agreement, had become parties to it, which was not the case.

It may be further observed, that her consent to sell, which is made necessary by the terms of the will, in order to effect a sale in her life-time, is to be considered in the nature of a license or authority to sell.    Now such a thing is revocable in its very nature, unless some valuable consideration should pass from the party receiving the authority to the party granting it, so as to couple it with an interest, and make it irrevocable.    In this case there was no such consideration, and the widow had a right to revoke her consent at any time before the sale, which, as appears from the testimony, was done.

By the will she had acquired a freehold estate in the land; it appears that, in consenting to a sale of it, she was agreeing to dispose of the land, which would seem to come within the scope and provisions of the act against frauds and perjuries, and that her consent ought, therefore, to have been in writing.    In short, I think that the direction of the court below was correct in every particular.

Judgment affirmed.